UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MANNY FILM, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>BRYAN NOTOWITZ,<br><br>        Defendant. | CASE NO. 9:15-cv-80307-RLR |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR ATTORNEY'S FEES AND COSTS**

Plaintiff, Manny Film, LLC ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 12(c) and 54 and 28 U.S.C. § 1921, moves for judgment on the pleadings against Defendant Bryan Notowitz ("Defendant") and an award of fees and costs, and states as follows in support.

**I.  INTRODUCTION**

Defendant's Answer is a one-page letter admission, in which Defendant admits "as soon as I clicked [the link] it [Plaintiff's copyrighted movie] started to download to my computer." CM/ECF 24.  Plaintiff sincerely appreciates Defendant's admission, and encourages the Court to take it into consideration when assessing statutory damages.  Contrary to Defendant's implied assertion, however, merely clicking a link does not cause one's computer to use BitTorrent. While it is possible to find a link for a .torrent file on something other than a torrent index website (*e.g.*, thepiratebay.com), it is not possible to use BitTorrent or download a .torrent file without specialized software.  In order to download a .torrent file, one has to download specialized software onto one's computer.  There are numerous varieties of BitTorrent software, generally referred to as "BitTorrent clients."  Here, Defendant used "BitTorrent 7.4.1."  By

1

failing to deny paragraphs 2, 17–33, 37, and 46 of Plaintiff's Amended Complaint, Defendant admits he used BitTorrent software.

Defendant did not innocently infringe Plaintiff's copyrighted work or accidentally use BitTorrent to download Plaintiff's movie. Instead, Defendant is a serial BitTorrent user and copyright infringer. Specifically, Plaintiff's investigator logged Defendant's IP address being used to download and distribute, via BitTorrent, over four hundred (400) third-party works between August 2013 and January 2015. Notably, about 99% of the content distributed on BitTorrent is protected by copyright. Defendant's use of BitTorrent 7.4.1 and his long history of gratuitous file-sharing makes clear Defendant knew exactly what he was doing. Significantly, Defendant did not—and in good faith cannot—deny paragraph 49 of Plaintiff's Amended Complaint, which alleges that Defendant's infringement was willful within the meaning of the Copyright Act.

In sum, the Court has before it an admitted willful copyright infringer and is now charged with assessing statutory damages against him. The Copyright Act authorizes a statutory damage award of up to $150,000, and Plaintiff would generally request an award of $30,000. In light of Defendant's candor in conceding to liability, however, Plaintiff seeks a statutory damage award of only $6,000, together with its reasonable fees and costs.

## II. ARGUMENT

### A. Legal Standard

"Rule 12(c) provides a means of disposing of cases when a judgment on the merits can be achieved by focusing on the content of competing pleadings." *Alibris v. ADT LLC*, No. 9:14-cv-81616, 2015 WL 5084231, *4 (S.D. Fla. Aug. 28, 2015) (citing *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014)). "Judgment on the pleadings is appropriate where there are no

material facts in dispute and the moving party is entitled to judgment as a matter of law." *Eisenberg v. City of Miami Beach*, 54 F. Supp.3d 1312, 1319 (S.D. Fla. 2014) (citing *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005)). "In resolving a motion for judgment on the pleadings, the Court considers the entire pleadings [and] may [also] take judicial notice of and consider documents which are public records." *Id.*

### B. Plaintiff Owns a Valid Copyright and Defendants has Unlawfully Copied

To prevail on its claim of direct copyright infringement, Plaintiff must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Singleton v. Dean*, 611 Fed.Appx. 671, 672 (11th Cir. 2015). As to the first element, Plaintiff has demonstrated that it has received a copyright registration for its film "Manny" from the United States Register of Copyrights, *see* CM/ECF 10-1 & 10-2, and has thus provided *prima facie* evidence of the requisite ownership. *See* 17 U.S.C. § 410(c); *Roof & Rack Prods., Inc. v. GYB Investors, LLC*, No. 13-80575-cv, 2014 WL 3183278, *3 (S.D. Fla. July 8, 2014) ("a certificate or registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright … as well as valid ownership"). Defendant has not denied that Plaintiff owns a valid copyright. As to the second element, Defendant concedes he downloaded and redistributed, without payment and without Plaintiff's authorization, a pirated copy of Plaintiff's copyrighted film. *See* CM/ECF 24 ("I got excited and as soon as I clicked [the link] it [Plaintiff's film] started to download to my computer."). As a matter of law, Defendant's conduct constitutes actionable copyright infringement. *See, e.g.*, *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 489-96, 497-501 (1st Cir. 2011) (finding copyright infringement where file-sharing software was used to download and distribute media); *Manny Film LLC v. Doe*, No. 0:15-cv-60455, CM/ECF 22 (S.D.

Fla. Aug. 13, 2015) (holding another defendant who similarly downloaded Plaintiff's film via BitTorrent liable for direct copyright infringement); *Countryman Nevada, LLC v. Adams*, No. 6:14-cv-491, 2015 WL 574395, *5 (M.D. Fla. Feb. 11, 2015) (holding that downloading a copyrighted movie via BitTorrent violates U.S. copyright law); *Thompsons Film, LLC v. Doe*, No. 2:13-cv-320, 2013 WL 1787807, *2 (M.D. Fla. April 26, 2013) ("[T]he use of [peer-to-peer] programs to download copyrighted [content] infringes copyright").

### C.  Plaintiff is Entitled to Statutory Damages and Attorney's Fees

Plaintiff hereby elects to recover statutory damages against Defendant as provided by 17 U.S.C. § 504.[1]   Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2).  For unintentional infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).  In the case of willful infringement, the Court may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Although the maximum damages of $150,000 per work is not appropriate in all or even most circumstances, Congress specifically amended the Copyright Act through the Digital Theft Deterrence Act of 1999 to increase the penalties for copyright infringement so that it would be high enough to adequately punish and deter:

> <u>Many computer users</u> are either ignorant that copyright laws apply to Internet activity, or they <u>simply believe that they will not be</u>

---

[1] Plaintiff need not prove actual damages to be entitled to an award of statutory damages, and may make an election of statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of [D]efendant's profits." *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002).

>       caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, it is manifest that **Congress respond appropriately with updated penalties to dissuade such conduct**. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

H.R. Rep. No. 106-216, at 3 (1999) (Emphasis added).

Here, this is not a case in which Defendant unknowingly infringed upon Plaintiff's copyright. Rather, Defendant's infringement was willful since he "acted with actual knowledge or reckless disregard for whether his conduct infringed upon copyright." *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp.2d 1310, 1312 (S.D. Fla. 2003). First, and most obvious, getting a film for free, when a person would otherwise have to pay for it, evinces intent to bypass legitimate means of obtaining the film. Defendant's decision to access a peer-to-peer file sharing system to download Plaintiff's film without payment evinces Defendant's "actual knowledge" or "reckless disregard" of his infringement. Indeed, this Court has explicitly held that if a defendant obtains a copyrighted work for free or for well below market price, that sales price differential is compelling evidence of willful infringement. *See, e.g.*, *Arista Records*, 298 F.Supp.2d at 1313 (so holding in the context of counterfeit music recordings).

Second, in order for Defendant to have even downloaded Plaintiff's copyrighted film via BitTorrent, Defendant would have had to first download torrent software (in this case, the BitTorrent client Defendant utilized is called "BitTorrent 7.4.1."). And, a 2010 study at Princeton University established that 99% of all files on BitTorrent infringe copyrights and 100% of the movies and television shows distributed do so.[2] As stated by Scott Turow, President

---

[2] http://www.digitalsociety.org/2010/01/princeton-study-99-of-bittorrent-files-pirated/.

of the Authors Guild, before the Senate Judiciary Committee, "BitTorrent is to stealing movies, TV shows, music, videogames, and now books what bolt-cutters are to stealing bicycles."[3] The International Federation for Phonographic Industry ("IFPI") issued a thought-provoking report entitled "Music, How, When and Where You Want it," in which the IFPI provides statistics establishing that file sharers' primary motivation for their theft is the "lure of free":

> A separate body of research helps explain why illegal file-sharing is having this impact on consumer behavior, confirming the main driver of piracy to be not better choice or quality, but the "lure of free". Researchers GFK found that "because it's free" was the main answer given among over 400 illegal filesharers in research unveiled in Sweden in July 2009. A study by Entertainment Media Research in the UK found that 71 percent of those who admitted they increased their file-sharing activity in 2008 did so "because it's free". In Norway, research by Norstat in 2009 also found the most cited reason for illegal downloading from P2P services was "because it's free". Further studies came to broadly the same conclusion in Japan and Belgium in 2009.

IFPI Report, attached as Exhibit "A" at p. 18.

Defendant's premeditated decision to download peer-to-peer file sharing software was clearly itself a willful and premeditated act aimed at enabling his copyright infringement. Notably, although Plaintiff only has standing to enforce its own copyrights, it knows that Defendant is a serial copyright infringer because Plaintiff logged Defendant infringe over four hundred (400) other copyrighted works via BitTorrent for over a year—from August 24, 2013 through January 27, 2015. Since Defendant necessarily infringed Plaintiff's copyright with either "actual knowledge" or "reckless disregard" (*i.e.*, "willfully" within the meaning of the Copyright Act), a statutory damage award of up to $150,000 is appropriate and permitted by the Copyright Act. Although Plaintiff would normally request an award of $30,000 and even though

---

[3] http://www.judiciary.senate.gov/pdf/11-2-16%20Turow%20Testimony.pdf.

Defendant attempted to dismiss this case, in light of Defendant's candid concession to liability, Plaintiff requests an award of only $6,000.

Statutory damages in this amount are warranted and comport with Congress's legislative intent because Plaintiff has lost significant sums in revenue due to Defendant's infringement.  To explain, Defendant materially aided each of the other participants in the BitTorrent swarm of infringers.  This swarm contained thousands of peers.  Plaintiff's actual damages are the lost sales of its content to those thousands of infringers.  In the aggregate, these lost sales far exceed the maximum award of $150,000.   Indeed, in November of 2014, Plaintiff's film was leaked onto the BitTorrent peer-to-peer file sharing network in advance of its U.S. theatrical release date of January 23, 2015.  *See* CM/ECF 10 at ¶ 15.  This pre-release infringement significantly contributed to Plaintiff's lost sales.  **Here, Defendant contributed to these significant losses by joining the BitTorrent swarm on November 30, 2014 and downloading and distributing portions of Plaintiff's copyrighted work for a full week—between then and December 7, 2014—all well before the U.S. theatrical release date.**  *See* CM/ECF 10.  Effectively, Defendant for nearly a week materially assisted thousands of others in infringing Plaintiff's work prior to its theatrical release.  Plaintiff's substantial losses are not insignificant and are to be considered in determining an appropriate amount of statutory damages.  *See Bait Prods. Pty Ltd. v. Murray*, No. 8:13-CV-0169-T-33AEP, 2013 WL 4506408, *5 (M.D. Fla. Aug. 23, 2013).

As evidenced by the large number of other infringers who participated in the BitTorrent swarm, the potential for future infringement by others is extremely high.  An award of statutory damages must adequately deter future infringements.  Based on the foregoing, the Court should award statutory damages sufficient to both deter and punish.  Because Plaintiff has set forth evidence demonstrating the value of its copyright, its lost sales, and Defendant's willful

infringement, an award of at least $6,000 is appropriate.  Such an award is notably less than those awarded in similar online infringement actions involving popular, full-length films.  *See, e.g.*, *Manny Film LLC v. Chang*, No. 0:15-cv-60445, CM/ECF 21 (S.D. Fla. July 31, 2015) (awarding $30,000 in statutory damages for online copyright infringement of a motion picture film); *Good Man Productions, Inc. v. Nazario*, No. 8:14-cv-3007, CM/ECF 33 (M.D. Fla. May 26, 2015) (same); *Good Man Productions, Inc. v. Patrick Hanley*, No. 14-62726 CM/ECF 21 (S.D. Fla. May 19, 2015) (same); *Good Man Productions, Inc. v. Arnaldo Chavez*, No. 14-24564, CM/ECF 22 (S.D. Fla. May 5, 2015) (same); *Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer*, No. 2:11-CV-70-FTM-29SPC, 2011 WL 4632597, *2 (M.D. Fla. Oct. 6, 2011) (same); *Bait Prods. Pty Ltd. v. Murray*, No. 8:13-CV-0169-T-33AEP, 2013 WL 4506408, *6 (M.D. Fla. Aug. 23, 2013) (awarding $25,000).

### D.  Injunctive Relief Should Also Be Awarded to Plaintiff

Plaintiff's Amended Complaint requested, and Plaintiff should be granted, permanent injunctive relief to prevent or restrain copyright infringement.  *See* CM/ECF 10; 17 U.S.C. § 502(a); 503(b). Indeed, "a showing of copyright infringement liability and threat of future violations is [generally] sufficient to warrant entry of a permanent injunction." *Microsoft Corp. v. Big Boy Distrib., LLC*, 589 F. Supp.2d 1308, 1321 (S.D. Fla. 2008).  Here, Defendant's conduct has materially contributed to Plaintiff's copyrighted film being exposed to "viral" infringement using the BitTorrent protocol, and the infringement will likely continue unabated in exponential fashion.  *See* CM/ECF 10.  To mitigate some of the damage he has caused, Defendant should be required to immediately delete each torrent file and unauthorized copy of Plaintiff's copyrighted film from his computer devices.  Granting such injunctive relief is warranted in equity and would not impose upon Defendant any cognizable hardship.  And,

Plaintiff's prevention of copyright infringement is in the public interest because it "preserv[es] the integrity of copyright laws which encourage individual effort and creativity by granting valuable enforceable rights." *DSC Communications Corp. v. DGI Tech.*, 898 F. Supp. 1183, 1196 (N.D. Tex. 1995).

### E.  Plaintiff Should be Awarded its Cost of Suit and Attorneys' Fees

Plaintiff is entitled to recovery of its costs of suit and attorneys' fees incurred in this action.  Section 505 of the Copyright Act expressly authorizes recovery of "full costs by or against any party other than the United States or an officer thereof," and further provides for an "award [of] a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  Plaintiff has incurred $4,051.85 in compensable costs and attorneys' fees, as further set forth in counsel's declaration attached hereto as Exhibit "B."  Since Plaintiff and its counsel have at all times acted in good faith and for purposes consistent with the Copyright Act, there is no compelling basis to force Plaintiff to incur the costs it incurred in prosecuting Defendant's piracy.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff, Manny Film LLC, respectfully requests entry of an order granting judgment on the pleadings in its favor and against Defendant Bryan Notowitz: (1) awarding Plaintiff statutory damages in the amount of at least $6,000.00 pursuant to 17 U.S.C. § 504(c)(1); (2) awarding Plaintiff its reasonable attorneys' fees and costs in the amount of $4,051.85 pursuant to 17 U.S.C. § 505; (3) permanently enjoining Defendant from directly, contributorily, or indirectly infringing Plaintiff's copyrights; (4) ordering Defendant to destroy all copies of Plaintiff's copyrighted work that Defendant wrongfully possesses; and (5) granting to Plaintiff any other and further relief deemed just and proper.

>Respectfully submitted,
>LIPSCOMB EISENBERG & BAKER, PL
>
>By: /s/ *Daniel C. Shatz*
>**M. Keith Lipscomb, Esq.**
>Florida Bar No. 429554
>klipscomb@lebfirm.com
>**Daniel C. Shatz, Esq.**
>Florida Bar No. 94696
>dshatz@lebfirm.com
>2 South Biscayne Blvd.
>Penthouse 3800
>Miami, FL 33131
>Telephone: (786) 431-2228
>Facsimile:  (786) 431-2229
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

>By: /s/ *Daniel C. Shatz*